EDWARD F. PETTIS v. GREEN RIVER ASPHALT COMPANY.*

FILED APRIL 7, 1904.  No. 13,215.

1. **Contract:** INSTRUCTION: ERROR. Where plaintiff's claim is for services under an alleged contract of a certain date, and the evidence tends to show an offer to engage services at a fixed price at that time on defendant's part, and immediately afterwards a beginning of such services on plaintiff's part, with defendant's knowledge and with no retraction of the proposition, it is error to instruct the jury, in substance, that there can be no recovery unless an express agreement on both sides was reached at the time alleged.

2. **Evidence:** CONVERSATIONS. Section 339 of the code only requires that the entire conversation on "the same subject" may be inquired into, or one necessary to make the other fully understood. If the conversation relates to different subjects, introducing one of them in proof does not entitle the other party to inquire as to the entire conversation on other subjects, except so far as is necessary to make the part already in fully understood.

ERROR to the district court for Lancaster county: LINCOLN FROST, JUDGE. *Reversed.*

* Motion to retax costs denied. See opinion, p. 519, *post.*

36

*Edward F. Pettis* and *Field & Andrews,* for plaintiff in error.

*J. W. Deweese* and *Frank E. Bishop, contra.*

Hastings, C.

Plaintiff filed petition in the district court for Lancaster county, alleging that the defendant is a corporation of the state of Missouri; that about June 1, 1902, defendant employed plaintiff to perform services in and about the conducting of business as paving contractors in the city of Lincoln, and agreed to pay for such services so contracted for 10 cents a square yard, amounting to $1,876; that plaintiff fully performed all of the services as by said contract he agreed to perform, and thereby defendant became indebted to him in the sum of $1,876, none of which has been paid. The defendant answered, saying that, still relying upon its objection to the jurisdiction for lack of legal service of summons, it admitted its incorporation in the state of Missouri, and denied plaintiff's other allegations. A reply was filed asserting jurisdiction, and that such jurisdiction had been found by the trial court, and that its conclusion on that subject was final. Trial was had to a jury, and a verdict returned for the defendant. The plaintiff brings error, and complains of the fifth instruction given by the court, which is as follows:

"The jury are instructed that, in order to establish the contract sued on, it is necessary for the plaintiff to show that the minds of the plaintiff and defendant, through its vice-president, Mr. R. W. Speir, met, and that the contracting parties mutually agreed to the terms of the contract substantially as set out in plaintiff's petition. The fact, if you find such to be true, that plaintiff performed services for the defendant under some other contract, expressed or implied, with the defendant, would not be sufficient to establish plaintiff's allegations in this case, nor should the proposition of compromise or settlement shown in evidence

be considered by you in determining what is due the plaintiff on the contract sued on, in the event that you find from the evidence and under these instructions that anything is due him."

It is urged that this instruction unduly narrowed the issues in the case and the application of the evidence. Of course, under the pleadings it was necessary for the plaintiff to establish his contract. This instruction told the jury that it was necessary for the establishment of that contract to prove that the minds of the plaintiff and defendant, through its vice-president, met, and that they mutually agreed to the terms of the contract substantially as set out in plaintiff's petition. The jury were also told that the fact that plaintiff performed services under some other contract, expressed or implied, would not be sufficient to establish plaintiff's allegations in this case. The two clauses taken together could have been interpreted to mean nothing else than that the only way by which plaintiff could establish his alleged contract with defendant, was by showing an express agreement on each side between the plaintiff and defendant's vice-president, on the one part, to perform these services and, on the other, to pay for them the stipulated price. Of course, if this was all the case which the plaintiff was tendering evidence to establish, the instruction would be correct. It is ordinarily necessary in order to establish a contract that the minds of the parties meet. It is so in this case. There must have been an intention on the part of each of them to contract; but it is not necessary that they mutually agreed, at the only interview which ever took place between plaintiff and defendant's vice-president, to the "terms of the contract substantially as set out in plaintiff's petition." It would be entirely sufficient to establish the contract set out in plaintiff's petition, that a proposition to procure certain services from the plaintiff at the alleged rate, was made to the plaintiff by defendant's vice-president at the interview, which took place in Sioux City, and that on his return

home and his investigating the circumstances, the plaintiff engaged in the performance of the services and, with the defendant's knowledge and without any withdrawal of the proposition, performed them. While it is necessary that the minds of the parties meet, it is not necessary that they meet at any specific time or place, and if by words or action, or by both, the plaintiff, within a reasonable time and before it was withdrawn, accepted a distinct proposition made at the date alleged in Sioux City, and performed the several things contemplated in that proposition, he would be entitled to claim the contract as of the date of the proposition. Plaintiff claims that such is the real state of affairs, which his evidence tends to establish, and that, consequently, the instruction confining him strictly to proof of mutual agreements entered into at the time of his interview with defendant's vice-president in Sioux City, was erroneous and prejudicial.

An examination of the evidence, as well as the discussion of it in the briefs of the parties, seems to show that, while there is really no claim that any agreement was reached in Sioux City, there is evidence tending to establish a proposition there made for such contract, and plaintiff's subsequent acceptance by going ahead, with the defendant's full knowledge and under frequent communication between the parties, to perform services, which are claimed to have been such as the offer contemplated, and to have been so accepted by the defendant. To be sure, the making of the proposition even is denied by the defendant, and it is also denied that services of the plaintiff, some of which are admitted to have been rendered, were in their nature and value such as were contemplated in the conversation in Sioux City. But these are both questions for the jury, under the evidence as it stands in this case, and were not submitted to them.

It is urged in defense of this instruction, that it submits to the jury the only case presented by plaintiff's pleadings. There seems no question but that the instruction requires an absolute mutual agreement. The petition merely

alleges a contract. There seems no reason to cite authorities to the proposition that the contract might be established by a proposition on the one side and action upon it by the other party with the proposer's knowledge and consent. In *Emery v. Cobbey,* 27 Neb. 621, after an offer had been expressly refused by one of the parties, his subsequent acting under it, with knowledge of the other party, is held to establish a contract. There was in this case, to be sure, an effort to show services which were not referred to in definite terms in the proposition, even on plaintiff's interpretation of his talk with defendant's vice-president, and there was ground for a caution to the jury not to allow plaintiff to recover on this contract merely because he had rendered some service; but it is clear that the plaintiff was not seeking to support his case on the ground of mutual agreement to render services on his part and to be paid a certain price for them on defendant's, but was basing it rather upon what was done by both parties in pursuance to an understanding had at Sioux City, and which seems to have been, on plaintiff's showing, indefinite as to everything except price. It seems clear that the trial court, in giving this instruction 5, unduly narrowed the issues to the plaintiff's prejudice, and that error is not corrected by any other instruction given. Indeed, it could hardly be. It is expressed in too stringent terms, and would be merely contrary to, and contradictory of, an instruction which would have permitted the establishment of the contract by the subsequent acts of the parties after the proposition, if one were made at Sioux City.

The complaint of errors in the refusal of instructions seems hardly well taken. Both of the instructions refused seem to be open to the criticism that there is no restriction of the services under consideration to such as the jury should find had been contemplated in the talk at Sioux City. Of course, other and different services from those contemplated in the proposition would be immaterial for the purpose of showing an acceptance or of entitling plaintiff to compensation under it.

It seems hardly necessary to discuss the complaints as to the admission and rejection of evidence. For the most part they seem to be based upon the view which the court took of the necessity, under the pleadings, to establish an express agreement at Sioux City between the parties.

At the argument the only complaint which was dwelt upon was the alleged violation of section 339 of the code, in refusing to permit R. W. Speir to answer question 840 in the bill of exceptions, and in rejecting the tender of proof made in support of it. The question was as follows: "You may state all that was said by Mr. Pettis at that meeting, as near as you are able, beginning at the beginning, touching and concerning the matter in dispute." The witness had stated that in a conversation held by him in New York, after these alleged services, with plaintiff, the latter had stated that he knew there was no contract. Plaintiff had testified previously that the entire New York conversation was an attempt to settle. It is now claimed that there was a right to go into the whole conversation and the cross-examining question calls for it. The question, however, seems too broad. All the conversation on "the same subject," that is, the fact of whether there was a contract or not, was what plaintiff was entitled to call for; not all the conversation as to plaintiff's claim. Anything in the conversation necessary to make this statement as to the contract understood was admissible, or that related distinctly to that contract. The talk simply in regard to a settlement was not needed for this purpose, and was rightly rejected. Only so much of the conversation as related to the subject of the existence of a contract was in question. The question was much broader than that.

For the error in unduly restricting plaintiff's right of recovery to one on an express agreement on each side, made in a conference of the parties, it is recommended that the judgment of the district court be reversed and the cause remanded for further proceedings according to law.

Ames and Oldham, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is reversed and the cause remanded for further proceedings according to law.

**REVERSED.**

The following opinion on motion to retax costs was filed November 2, 1904. *Motion denied:*

Costs: BILL OF EXCEPTIONS. The necessary expense of settling a bill of exceptions upon the determination of a cause in the district court is taxable as costs incurred in that court to be adjudged against the unsuccessful party in the final determination of the litigation.

SEDGWICK, J.

The plaintiff in error in this case, having been successful in this court, and being entitled to recover his costs incurred in this court, insists that the expense of obtaining the transcript of the evidence in the court below for the purpose of settling a bill of exceptions is a part of the costs in this court and should be taxed as such. The appellant or plaintiff in error, upon obtaining judgment in this court reversing the decree or judgment of the lower court, is entitled to recover his costs in this court without regard to the further proceedings after the case is remanded to the district court, and notwithstanding that he may be ultimately defeated in the litigation. The costs, however, in the district court, whether before or after the appeal or proceedings in error in this court, are to abide the final result of the suit and to be taxed against the unsuccessful party. If the expense of settling the bill of exceptions is to be considered, under such circumstances, as costs in this court, this motion should be sustained; but if such expense is cost incurred in the district court, the motion must be overruled. *National Masonic Accident Ass'n v. Burr,* 57 Neb. 437.

Our code provides that a party objecting to the decision of a court must except at the time the decision is made,

and time may be given to reduce the same to writing. Sec.
308. The exception must be stated with so much of the
evidence as is necessary to explain it. Sec. 309. If the de-
cision objected to is entered on the record, and the grounds
of objection appear in the entry, the exception may be
taken by the party causing to be noted, at the end of the
decision, that he excepts. Sec. 310. If the decision is
not entered on the record or the grounds of objection do
not sufficiently appear in the entry, the party excepting
must reduce his exceptions to writing within a limited time
after the adjournment of the term (sec. 311), and must
submit the same to the adverse party for examination. If
objections are made, and the judge has determined and
approved a correct statement of exceptions, it is allowed
by the judge and is made a part of the record of the case.
For this purpose, it is filed by the clerk and preserved by
him as the other records in the case. It seems to be ad-
mitted that the bill of exceptions then becomes a record
of the district court. It never becomes a permanent record
of the supreme court.

The code provides that the plaintiff in error shall file
with his petition in error in this court a transcript of the
proceedings containing the final judgment or order sought
to be reversed, vacated or modified (sec. 586), and also
that the clerk of the district court shall upon request, and
being paid the lawful fees therefor, furnish an authenti-
cated transcript of the proceedings to either of the parties
to the same or to any person interested in procuring such
transcript. Sec. 587. This, of course, involves making a
copy of the whole record, which would include the bill of
exceptions as a part of the records of the district court.
By section 1, chapter 28, laws 1881, it was provided that,
instead of copying the bill of exceptions into this tran-
script, the original bill of exceptions itself shall, on the
request of any party desiring to prosecute proceedings in
the supreme court, be attached to the transcript or record,
and be certified by the clerk of the district court to be the
original bill of exceptions.

After the case is disposed of in the supreme court, the bill of exceptions is to be returned to the district court upon the request of any party interested. Code, sec. 587c. If the appellant should take a transcript of the entire record of the district court, including the bill of exceptions, instead of having the original bill of exceptions attached to his transcript, his right to have the expense of such transcript taxed as costs in this court might, perhaps, be questioned on the ground that such expense was unnecessary; but there could be no doubt of his right to proceed in such manner or of the efficacy of such transcript. It is suggested that, in practice, bills of exceptions are usually procured to be allowed with the view of taking the case to this court upon appeal or proceedings in error, and that therefore it ought to be considered that the expense of settling such bills is a necessary cost of this court. While it is true that bills are generally procured to be allowed with such purpose in view, yet it is not always the case. It sometimes happens that it is necessary that the records of the district court should be made thus complete for use in that court. This seems to be contemplated by the statute which requires them to be settled in that court and makes them a part of the record there. By the practice in some of the districts of this state, the clerk has entered the expense of the bill of exceptions as costs in the case, when the bill of exceptions is filed with him as a part of the records of his office. This appears to be the correct practice. 11 Cyc. 232d; *Pinney's Will,* 27 Minn. 280.

In *Palmer v. Palmer,* 97 Ia. 454, the court appears to take a different view. It would seem from the opinion that the practice there is quite similar to our own, and that when the bill of exceptions is settled, it is made a part of the record of the district court and, as such, filed in said court; and yet the court say: "It is to be remembered that the costs of the transcript follow the costs in this court because made upon appeal." There is no explanation of the sense in which it may be said that these costs are made upon appeal. Possibly, the view above suggested

was taken that, since bills of exceptions are usually settled with a view of prosecuting proceedings in the supreme court, the costs of the same should be considered as costs of the reviewing court; but, as before stated, it seems to us that the rule to be derived from our statute and practice is otherwise. The view of the Minnesota court, as expressed in the case above cited, is in harmony with the provisions of our statute above quoted. We have noticed several decisions of other courts more or less directly bearing upon the question here presented, but none of them sufficiently discuss the statutes and rules of practice from which they are derived to make them available as authorities in this state. Among them may be noted the following: *Hayes v. Livingston*, 35 Mich. 371; *Roby Lumber Co. v. Gray*, 73 Mich. 356; *Novotny v. Danforth*, 9 S. D. 412; *First Nat. Bank v. North*, 6 Dak. 136; *Brown v. Winehill*, 4 Wash. 98; *Turner v. Muskegon Machine & Foundry Co.*, 97 Mich. 166.

We think that costs of settling the bill of exceptions are costs made in the district court, and should be taxed as such against the unsuccessful party in the final determina- of the litigation.

MOTION OVERRULED.